## DANIEL YARBROUGH, Respondent, v. NATIONAL BENEVOLENT SOCIETY, Appellant.

### St. Louis Court of Appeals, April 9, 1901.

1. **Benefit Certificate:** MEANING OF CONDITION IN CLAUSE CONCERNING PARALYSIS: PARALYSIS, DEFINITION OF. Paralysis, in the medical nomenclature, is usually restricted to the loss or impairment of voluntary muscular power, and is regarded rather as a symptom than as a disease per se and generally connected with a marked lesion of some portion of the nervous system.

2. ———: ———: ———. And in the case at bar, the disease from which respondent was suffering was poliomyletis, or inflammation of the spinal cord. The paralysis of his limbs and side resulted from the diseased condition of the spinal cord.

3. ———: ———: ———. And the exemption clause in his benefit certificate to the effect that "this benefit does not cover disabilities resulting from paralysis," absolves the benefit society from liability only when the disability is the direct result of paralysis.

4. ———: ———: ———. In the case at bar, the paralytic condition was but a sequence or incident of an inflammation of the spinal cord developed after the disease had reached a certain stage in its progress and disappeared with the disappearance of the inflammatory disease.

5. ———: ———: ———. In the case at bar, it is certain that the case is not one in which the disability is the *result* of paralysis.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

Plaintiff sued to recover sick benefits provided for in his benefit certificate, issued to him by the respondent. The clause of the certificate on which he relies reads as follows: "First. If the above named member shall be taken with sickness that begins after thirty days from the date of this certificate, to such an extent that he shall be confined in bed, upon receipt of proofs satisfactory to the society of such confinement and on the terms herein specified and referred to, the member, if a man, shall be paid ten dollars per week, and if a woman, seven and one-half dollars per week, during the time the member is continuously confined in bed, after the first five days, not to exceed twenty-six weeks." To this clause was added this condition: "These benefits do not cover   *   *   *   disabilities resulting from paralysis."   *   *   *

The evidence was that plaintiff was confined to his bed on account of sickness from the first of March, 1899, until the first of the following September. In respect to the disease plaintiff had, his physician testified as follows: "I was called to see Mr. Yarbrough on or about the first of March, 1898. Found him suffering from poliomyletis inflammation extending up the cord gradually, for about six weeks, at which time he became paralyzed, first in the leg of right side and bladder, then within a few days, paralysis of arm on right side, all due to pressure on cord by products of inflammation. The paralysis above mentioned continued for about two months when it commenced to disappear gradually as it came, up to 'the first of September, 1898, when he was able to walk out, paralysis

of bladder remaining for more than a year longer, then disappearing altogether. From the history of the case I judge the cause to be due to an injury. I mean that part of history that I got from himself and family before I was called. I saw no evidence of an injury. External injuries to the spine would be more likely to produce inflammation of membrane of cord or spinal meningitis than myelitic. Paralysis more often occurs as a result of some other affliction, as la grippe or idiopathically, or without any assignable cause."

Plaintiff testified that he was a blacksmith, that a day or two before he became sick he undertook to shoe a young and wild mule and that in the process of shoeing the mule he was jerked around considerably; that he was taken sick first with a chill, then fever and in a few days afterward with pain in his back. His evidence, and that of one of the attending physicians, was, that in two or three weeks after his first illness, the toes of one of his feet became numb and that the numbness gradually ascended until the entire leg was numb and the fingers of his hand on the same side of his body became numb and the numbness ascended his arm until that became powerless, and finally his entire side and tongue became numb or paralyzed; that this condition continued for about three weeks, when the numbness gradually passed away and he was able to get out of bed and walk.

Defendant offered an instruction in the nature of a demurrer to the evidence which the court refused, and instructed the jury to find whether or not the defendant was sick and confined to his bed from any disability resulting from paralysis, and to find for defendant if they found that his disability resulted from paralysis, if not, to find for the plaintiff, and assess his damages at two hundred and forty dollars. The jury found for plaintiff and assessed his damages at two hundred and forty dollars. Defendant appealed.

*G. B. Silverman* for appellant.

The respondent accepts and agrees to a certificate of insurance contract and pays the assessment premium thereon, which contract contains a benefit of ten dollars per week to be paid to him in the event of his being confined to his bed with sickness, but if his sickness (or disability) be paralysis, then he agrees, and in said contract agreed, not to be entitled to, or hold appellant liable for, any weekly benefits whatsoever. The provision excepting benefits in cases of paralysis is a valid and reasonable one; respondent, accepted membership in the National Benevolent Society, knowing full well that he could not legally demand weekly benefits for the disability or sickness, paralysis. Bacon on Benevolent Societies (Ed. 1888), chap. 10, p. 490; Harrington v. Benevolent Ass'n, 70 Ga. 340; Blacksmith's Society v. Vandyke, 2 Wharton (Pa.) 309; Benevolent Society v. Buford, 70 Pa. St. 321.

*J. P. Nixon* and *Dickey & McDowell* for respondent.

This case seems to be narrowed down to the single question as to whether respondent's disability was the result of or caused by paralysis, and we hold that by "paralysis," as mentioned on the back of the policy, is meant what is commonly, or in medicine, understood by the term.

BLAND, P. J.—"Paralysis in medical nomenclature is usually restricted to the loss or impairment of voluntary muscular power and is regarded rather as a symptom than as a disease per se and generally connected with marked lesion of some portion of the nervous system." Vol. 18, pp. 258, 259, Encyclopedia Brittanica.

The disease from which respondent was suffering was

poliomyletis inflammation, or inflammation of the spinal cord, as explained by the attending physicians. The paralysis of his limbs and side resulted from the diseased condition of the spinal cord. The exemption clause of the benefit certificate, absolves the appellant from liability when the disability is the result of paralysis; that is when the disability is the direct result of paralysis. According to the evidence, respondent's disability was occasioned by a disease known as poliomyletis inflammation. His paralytic condition was but a sequence or incident of that disease, developed after the disease had reached a certain stage in its progress and disappeared with the disappearance of the inflammatory disease. In this state of the evidence, it can not be said that respondent's disability was the result of paralysis, for the paralysis was itself the result of another distinct and well-defined disease. There being no such disease as paralysis per se, it is difficult, if not impossible, to apply the exemption clause of the benefit certificate when a holder of one of these certificates becomes temporarily paralyzed as an incident of some other well-defined disease from which he suffers. Certain it is that the case in hand is not one in which the disability is the *result* of paralysis, and we affirm the judgment. All concur.